UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JESSICA B.,[1]

                                Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.
_____

**DECISION & ORDER**

20-CV-1512MWP

## **PRELIMINARY STATEMENT**

Plaintiff Jessica B. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Supplemental Security Income and Disability Income Benefits ("SSI/DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned.

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 10, 12). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

**DISCUSSION**

**I.      Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). When assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his or her past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

II.     <u>**ALJ's Decision**</u>

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. (Tr. 24-38). Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 15, 2016, the application date. (Tr. 27). At step two, the ALJ concluded that plaintiff had the severe impairments of major depressive disorder, generalized anxiety disorder, and posttraumatic stress disorder ("PTSD"). (*Id.*). The ALJ concluded that plaintiff also suffered from physical impairments, including back pain, hip pain, and carpal tunnel syndrome, but that these conditions were nonsevere. (Tr. 27-28). At step three, the ALJ determined that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments. (Tr. 28-30). With respect to plaintiff's mental limitations, the ALJ found that she suffered from moderate limitations in concentrating, persisting, or maintaining pace, and interacting with others, and mild limitations in understanding, remembering, or applying information, and adapting or managing oneself. (*Id.*). The ALJ concluded that plaintiff had the RFC to perform the full range of work at all exertional levels, but was limited to non-complex work involving simple, repetitive, one-and-two-step tasks that did not require her to work in tandem with coworkers, interact with the public, or be exposed to work-place hazards and which required only occasional interactions with supervisors and incidental contact with coworkers. (Tr. 30-36). At steps four and five, the ALJ determined that plaintiff was able to perform her prior work as a hand packager

and that other jobs existed in the national economy that plaintiff could perform, including the positions of cleaner housekeeping and addresser. (Tr. 36-37). Accordingly, the ALJ found that plaintiff was not disabled. (*Id.*).

### III.   Plaintiff's Contentions

Plaintiff contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 10-1, 13). First, plaintiff challenges the determination on the grounds that the ALJ failed to properly develop the administrative record with respect to her physical impairments. (Docket ## 10-1 at 15-22; 13). Next, plaintiff challenges the ALJ's mental RFC determination on the grounds that it is not supported by any medical opinion evidence and is the product of the ALJ's own lay interpretation of the evidence. (Docket # 10-1 at 22-26).

### IV.   Analysis

Having carefully reviewed the ALJ's decision, I agree with plaintiff that the ALJ's mental RFC determination was flawed, albeit on grounds not specifically identified by plaintiff. Rather, I conclude that the ALJ placed undue emphasis on plaintiff's ongoing substance abuse struggles without properly evaluating the materiality of her substance abuse as required by applicable regulations. The ALJ's failure to conduct the required analysis impedes this Court's ability to determine whether substantial evidence supports his determination that plaintiff is not disabled. Accordingly, remand is appropriate.

Under the Social Security Act, "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor *material* to the

5

Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J) (emphasis supplied). Thus, in cases such as this, where alleged nonexertional limitations include substance abuse, the inquiry "does not end with the five-step analysis." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012), *cert. denied*, 570 U.S. 919 (2013). Rather, "if the ALJ determines that a claimant is disabled, and the record contains medical evidence of substance abuse, the ALJ must proceed to determine whether the substance abuse is a contributing factor material to the determination of disability – that is, whether the claimant would still be found disabled if [she] stopped using drugs or alcohol." *Lynn v. Colvin*, 2017 WL 743731, *2 (W.D.N.Y. 2017) (quotations omitted); *see also Cage v. Comm'r of Soc. Sec.*, 692 F.3d at 123 ("[t]he critical question is whether the SSA would still find the claimant disabled if she stopped using drugs or alcohol") (internal quotation and brackets omitted); 20 C.F.R. §§ 404.1535(a), 404.1535(b)(1), 416.935(a), 416.935(b)(1).

In making this determination, the Commissioner must evaluate which of the claimant's "current physical and mental limitations, upon which [the Commissioner] based [her] current disability determination, would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. § 404.1535(b)(2); *see also* 20 C.F.R. § 416.935(b)(2). If the Commissioner determines that the claimant's "remaining limitations would not be disabling, [the Commissioner] [must] find that [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(b)(2)(i); *see also* 20 C.F.R. § 416.935(b)(2)(i). The claimant bears the burden of proving that drug addiction or alcoholism is not material to the disability determination. *Cage*, 692 F.3d at 123.

The regulations make clear that "the ALJ must first make a determination as to disability by following the five-step sequential evaluation process, without segregating out any effects that might be due to substance use disorders." *Morales v. Colvin*, 2015 WL 13774790, *17 (S.D.N.Y.) (internal quotations omitted) (collecting cases), *report and recommendation adopted by*, 2015 WL 2137776 (S.D.N.Y. 2015). In other words, the ALJ's "initial disability determination should concern strictly symptoms, not causes." *Id.* (quotations and brackets omitted); *see O'Connell v. Astrue*, 2009 WL 606155, *26 (N.D.N.Y. 2009) ("[t]he plain text of the regulation requires the ALJ to first use the standard sequential analysis to determine whether the claimant is disabled, without segregating out any effects that might be due to substance use disorders") (quotations omitted). "Only after the claimant has been determined to be disabled should the ALJ consider whether the claimant would remain disabled if [she] stopped abusing drugs and alcohol." *Morales v. Colvin*, 2015 WL 13774790 at *17; *see Piccini v. Comm'r of Soc. Sec.*, 2014 WL 4651911, *12 (S.D.N.Y. 2014) ("[o]nce the claimant is found to be disabled, the ALJ then considers whether the drug addiction or alcoholism is a contributing factor"); *O'Connell v. Astrue*, 2009 WL 606155 at *26 ("substance abuse becomes material to a benefit determination only after the claimant is found to be disabled according to the sequential analysis") (quotations omitted).

In this case, the ALJ's RFC analysis is replete with references to plaintiff's ongoing struggles with alcohol and narcotics. (Tr. 30-36). The ALJ's RFC analysis summarizes plaintiff's mental health history, including repeated references to her reported consumption of alcohol, marijuana and cocaine. (*Id.*). The ALJ noted that on two occasions plaintiff presented to medical facilities under the suspected influence of alcohol, valium and/or cocaine. (Tr. 31 (citing Tr. 329-42), 32-33 (citing Tr. 699-700)). He also noted that the medical record

documented plaintiff's reports that she consumed cocaine, marijuana and alcohol and that at least one toxicology screen was positive for the presence of cocaine.[2] (Tr. 31-33 (citing Tr. 368, 502, 580, 671-72, 675)).  When evaluating the persuasiveness of a medical source statement submitted by plaintiff's treating psychiatric nurse practitioner, Faye Taber, the ALJ determined it was unsupported by the record in part because "periods where the claimant has demonstrated marginal adjustment or exacerbation of symptoms, have included timeframes in which she reported using alcohol, or cocaine, or significant social stressors."  (Tr. 35).  The ALJ concluded that "[t]he record documents that any psychiatric exacerbations [plaintiff] has experience[d] have been related to substance use."  (Tr. 31, *see also* Tr. 33 ("the record also documents evidence of alcohol or cocaine use corresponding with increased symptoms or exacerbations, at times")).

    The ALJ's repeated references to plaintiff's ongoing substance use issues suggest that he may have improperly "conflate[d] the substance abuse analysis with the disability determination itself."  *See Piccini v. Comm'r of Soc. Sec.*, 2014 WL 4651911 at *15; *Lovelace v. Colvin*, 2016 WL 4708239, *7 (S.D.N.Y.) ("[i]n taking [p]laintiff's alcohol dependence into account in determining whether [p]laintiff had particular impairments for purposes of assessing whether he was disabled in the first instance, the ALJ deviated from the procedure required in the regulations"), *report and recommendation adopted by*, 2016 WL 4690412 (S.D.N.Y. 2016); *Horst v. Colvin*, 2016 WL 6436565, *9 (N.D. Iowa 2016) ("[t]he question in this case, though, is whether the ALJ, nonetheless improperly, discounted opinions about claimant's limitations by segregating the effect of claimant's substance abuse before reaching the decision of whether claimant was disabled"); *Tapp v. Barnhart*, 2002 WL 31295333, *23 (N.D. Iowa 2002) ("the

---

[2] In his decision, the ALJ mischaracterizes plaintiff's report to her mental health provider as reflecting that she had consumed alcohol during her most recent manic episode. (Tr. 33 (citing Tr. 675)).  To the contrary, the treatment notes reflects that plaintiff actually reported that she had abstained from alcohol consumption during the episode.  (Tr. 675).

ALJ made an ultimate finding that [plaintiff] was not disabled . . . , but appears to have done so only by taking into account [plaintiff's] alcoholism[;] [t]his puts the cart before the horse, as the first determination must be whether [plaintiff] is disabled as he presented himself, without deducting out alcohol") (internal quotations omitted).  The ALJ's failure to cite or analyze the applicable regulations addressing substance abuse analysis further suggests that the ALJ erred in the analysis.  *See Timothy I. v. Berryhill*, 2018 WL 5312039, *11 (E.D. Mo. 2018) ("the ALJ did not cite the applicable regulations, nor is it clear that the failure to do so is merely a drafting oversight"); *Patterson v. Colvin*, 2016 WL 7242157, *8 (E.D. Mo. 2016) ("the ALJ did not mention the relevant regulation[,] . . . [and] performed a collapsed and truncated analysis, considering [p]laintiff's alcohol dependence in connection with the ALJ's credibility determination as well as the determination of [p]laintiff's RFC"); *Parker v. Comm'r of Soc. Sec.*, 2014 WL 902692, *11 (E.D. Mich. 2014) ("the ALJ's analysis is highly problematic because she failed to even acknowledge the appropriate regulation and certainly did not follow the prescribed procedure").  Moreover, the ALJ's discussion of the persuasiveness of Taber's medical opinion also suggests that he improperly factored in plaintiff's substance use when evaluating that assessment.  *See Morales*, 2015 WL 2137776 at *26 ("while substance abuse is ultimately relevant in determining whether a claimant is disabled under the regulations[,] it bears no relevance to the weight that must be given to the opinion of a treating physician") (internal quotations and ellipses omitted).

In this case, ample record evidence exists demonstrating that plaintiff suffered from diagnosed mental impairments, including depression, anxiety, and PTSD, for which she received inpatient and outpatient treatment and was prescribed various medications.  (*See*, *e.g.*, Tr. 392-511, 528-702, 719-48).  Although the ALJ acknowledged that plaintiff suffered from

these severe mental impairments, his decision suggests that he may have discounted limitations associated with these impairments because he concluded that they were caused, or substantially exacerbated, by plaintiff's ongoing substance abuse issues. Indeed, the ALJ's conclusion that plaintiff's periods of exacerbated symptoms corresponded with periods of documented substance use strongly suggests that, in assessing disability in the first instance based on the entirety of plaintiff's symptoms, the ALJ "improperly minimized or excluded symptoms because they may have been caused by substance abuse." *See Piccini*, 2014 WL 4651911 at *15; *see also*, *e.g.*, *Morales*, 2015 WL 13774790 at *21 ("[t]hese comments of the ALJ suggest that, in connection with making his initial RFC assessment, he examined the reasons behind [p]laintiff's symptoms, and then discounted the symptoms where he found that they were caused by alcohol and drug abuse – an approach that is improper under the regulations"); *Parker v. Comm'r of Soc. Sec.*, 2014 WL902692 at *10 ("[t]his determination must be based on substantial evidence of plaintiff's medical limitations without deductions for the assumed effects of substance use disorders") (internal quotations omitted); *Webb v. Colvin*, 2013 WL 5347563, *6 (W.D.N.Y. 2013) ("[t]he ALJ's decision is unclear as to whether he determined that [p]laintiff was not disabled after consideration of these symptoms, or if symptoms resulting from [p]laintiff's substance abuse were discounted prior to this determination"); *O'Connell*, 2009 WL 606155 at *27 ("the ALJ never clearly found [p]laintiff disabled before" determining that his "alcoholism is 'primary and material'"). Under such circumstances, remand is required "so that the ALJ can separately determine [plaintiff's] disability before assessing whether or not her [substance use] constitutes a contributing factor material to that determination." *Piccini*, 2014 WL 4651911 at *15; *see also Webb v. Colvin*, 2013 WL 5347563 at *6 ("[t]he matter is therefore remanded to the ALJ to develop the narrative discussion regarding whether [p]laintiff was disabled based on

the entirety of his symptoms . . . and, if necessary, to then determine if his polysubstance addictions were a material contributing factor").

Of course, after applying the proper regulatory analysis on remand, the ALJ may conclude that plaintiff is not disabled. At this stage, however, the Court's inability to determine that the ALJ followed the appropriate regulatory analysis "creates an unacceptable risk that a claimant [was] deprived of the right to have her disability determination made according to the correct legal principles." *Piccini*, 2014 WL 4651911 at *16 (quoting *Schaal v. Apfel*, 134 F.3d at 504).

Having concluded that remand is warranted, I need not reach plaintiff's remaining contentions. *See Erb v. Colvin*, 2015 WL 5440699, *15 (W.D.N.Y. 2015) (declining to reach remaining challenges to the RFC and credibility assessments where remand requiring reassessment of RFC was warranted). Nevertheless, in an effort to assist the remand proceedings, I note that several findings in the ALJ's decision suggest inconsistencies with the record evidence. First, throughout his decision, the ALJ characterized plaintiff's mental status during her mental health treatment appointments as normal or unremarkable (*See*, *e.g.*, Tr. 31 ("mental status examination findings in the record are generally unremarkable") despite the fact that the medical records reflect a range of mental status observations, including "tearful," "depressed," "anxious," "labile" mood, "easily triggered," "frustrated," "irritable," "hypomanic," "low energy," and "unrested," and that plaintiff sometimes demonstrated "psychomotor retardation" and exhibited only "intermittent eye contact." (*See*, *e.g.*, Tr. 442 (tearful and easily triggered"), 458 ("tearful and easily triggered"), 467 ("tearful and frustrated"), 502 ("tearful and frustrated," "intermittent eye contact," "spoke in normal tone and slow rate"), 509 ("tearful and frustrated," "intermittent eye contact," "spoke in normal tone and slow rate"), 585 ("tearful"),

587 ("tearful"), 591 ("high levels of depression and anxiety"), 599 ("tearful in session", "depressed and having trouble with functioning"), 603 ("tearful and irritable"), 666 ("depressed, anxious"), 668 ("depressed"), 670 ("depressed," "psychomotor retardation"), 674 ("manic"), 678 ("tearful," "depressed"), 730 ("labile"), 732 ("hypomanic"), 735 ("depressed," "anxious"), 737 ("depressed," "low energy"), 744 ("depressed"), 746 ("stressed")). Moreover plaintiff's providers described her personal hygiene as "poor," "disheveled," and "malodorous." (*See*, *e.g.*, Tr. 442 ("not well kept and with poor hygiene"), 458 ("not well kept and with poor hygiene"), 509 ("poorly kept with poor hygiene"), 577 ("[client] reports that she showered for the first time in several days"), 578 ("disheveled and malodorous"), 585 ("mild hygiene issues noted"), 589 ("poor hygiene"), 591 ("some hygiene issues noted"), 593 ("mild hygiene issues"), 603 ("somewhat disheveled"), 607 ("poor hygiene"), 666 ("disheveled"), 670 ("disheveled"), 674 ("disheveled," "unrested"), 678 ("disheveled"), 730 ("disheveled"), 735 ("disheveled")). Although the ALJ did note that some treatment notes reflected that plaintiff was "tearful" and demonstrated a "depressed mood and affect," (Tr. 31, 33), he ignored these other observations.

Next, the ALJ noted that plaintiff's claimed symptoms and limitations were inconsistent with her activities of daily living, including "childcare, pet care and attending to household chores" (Tr. 33-34), despite the fact that, according to the mental health treatment notes, plaintiff had significant difficulties managing daily functioning. Indeed, during some periods, plaintiff reported an inability to leave her bedroom, explaining that she stayed in bed all day with her infant and dogs. (Tr. 442 ("I've spent the last four days in bed"), 502 ("[c]lient reports she spends all day in her room with her dogs and the baby watching tv"), 589 ("[client] won't leave her room even to go to the bathroom"), 591 ("she reports high levels of depression where she doesn't get out of bed for days"), 593 ("reports she doesn't always get out of bed")).

During such periods, plaintiff reported using a bucket for toileting because she was unable to leave her room. (Tr. 599). Moreover, the record suggests that plaintiff had difficulties managing her childcare responsibilities, which resulted in involvement with Child Protective Services and reliance on her other children or relatives to watch her infant during periods of debilitation. (Tr. 667 ("fearful her children will be removed from her care"), 738 ("[s]he is coping by sleeping while her older children are home to watch her daughter"), 746 ("CPS is involved")). In addition, throughout the decision, the ALJ frequently noted plaintiff's non-compliance with treatment, either by repeatedly missing appointments or failing to take prescribed medications (Tr. 31-33 ("[s]he had numerous periods of noncompliance, wherein she did not take medication as prescribed, and/or was lost to follow up for various reasons")), despite the fact that her medical records suggest that her inability to comply with treatment recommendations may have been a result of her "instability." (Tr. 589 ("[client] has been [discharged] previously due to poor attendance, this may be due to her instability")).

        Finally, the ALJ found the opinion provided by examining consultant Susan Santarpia to be partially persuasive (Tr. 34) even though Santarpia was unable to review plaintiff's mental health treatment records prior to authoring the opinion and attributed plaintiff's difficulties to her failure to obtain medication to address her mental impairments. (Tr. 367-71). Following Santarpia's evaluation, plaintiff received more consistent mental health treatment, including inpatient treatment and medication management. Accordingly, on remand the ALJ should consider whether an updated consultative evaluation is warranted. The ALJ should also consider whether further development of the record relating to plaintiff's treatment for her alleged chronic pain is warranted, including determining whether she received treatment from any pain management specialists, rheumatologists, or neurologists.

**CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 12)** is **DENIED**, and plaintiff's motion for judgment on the pleadings **(Docket # 10)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

                                                                               *s/Marian W. Payson*
                                                                              MARIAN W. PAYSON
                                                                     United States Magistrate Judge

Dated:  Rochester, New York
          August 22, 2022